**GUM BROS. CO. et al. v. MORTON et al.**

No. 9409—Opinion Filed Sept. 10, 1918.

(175 Pac. 350.)

### Indians—Mortgage of Allotment—Restriction on Alienation—Burden of Proof—Enrollment Records.

By virtue of the Supplemental Creek Agreement of June 30, 1902, all restrictions upon surplus lands of citizens expired on August 8, 1907, and stood removed until July 28, 1908, except as to minors and full bloods. On June 20, 1899, the plaintiff was enrolled as a three-fourths Creek Indian as of the age of 11 years, without giving date of birth, and was duly granted an allotment, which he thereafter, on the 30th day of September, 1915, mortgaged. Subsequently he filed a petition in ejectment, and the defendants answered that they were the owners and holders of notes and mortgages upon the allotted lands. The plaintiff replied that, by reason of his tribal relations, the lands were restricted and not subject to alienation. Held, (a) that the burden of proving the surplus lands were not subject to alienation was upon the plaintiff, and (b) that the enrollment records, failing to show date of birth, were not conclusive as to age.

(Syllabus by Springer, C.)

Error from District Court, Okmulgee County; Chas. G. Watts, Judge.

Action to quiet title by Richard L. Morton and others against Gum Bros. Company, a corporation, and others. Judgment for plaintiffs, motion for new trial overruled, and defendants bring error. Reversed and remanded for new trial.

Ames, Chambers, Lowe & Richardson, for plaintiffs in error.

Merwine & Merwine, for defendant in error Morton.

Opinion by SPRINGER, C. The parties will be referred to as they appeared in the lower court. The plaintiff filed his petition on the 28th day of February, 1916, in which he sought to quiet title to the southeast quarter of section 4, township 13 north, of range 14 east, of I. M., in Okmulgee county, Okla. In the petition it is alleged that he was enrolled as a three-fourths blood Creek Indian on the 20th day of June, 1899, and that the enrollment record shows that the plaintiff was at that time 11 years of age; and, further, that he received as his portion of the allottable land of the Creek Tribe of Indians the tract of land above described; that he is the legal and equitable owner of the real estate and in the possession thereof, and that the defendants claim some interest in the property adverse to that of the plain-tiff; and prays the court for judgment that the title be quieted as against the defendants, and that they be enjoined from asserting any claim or interest in or to said property adverse to the plaintiff. There was attached to the petition a copy of the homestead and allotment deeds collectively describing the lands.

The defendants filed their separate answers. Gum Bros. Company filed it answer, in which it first denied the allegations of the plaintiff's petition, and then it alleged its interest in the lands described in the petition to be that on the 30th day of September, 1915, Richard L. Morton, the plaintiff, and Bessie Morton, his wife, delivered to Gum Bros. Company their two certain promissory notes of $75 each payable on the 1st day of October, 1916 and 1917, respectively, and for the purpose of securing the payment of the notes Richard L. Morton and Bessie Morton, of even date therewith, delivered to said Gum Bros. Company a real estate mortgage, duly executed and acknowledged, and filed for record in the office of the county clerk of Okmulgee county. It further pleaded in its answer that the notes were unpaid, and that said mortgage constituted a valid and subsisting lien upon the land in the sum of $150.

Oliver Ball, another defendant, filed his separate answer, in which he claimed a lien upon the land in dispute by reason of a certain mortgage executed by Richard L. Morton and Bessie Morton, his wife, to Gum Bros. Company, on the 3d day of November, 1915, to secure the payment of $600 due on January 1, 1921, and that Gum Bros. Company had duly assigned the mortgage to the defendant Ball, and that the mortgage was duly recorded and was a valid and subsisting lien upon the property.

Jessie Veness, another defendant, filed her separate answer, in which she claimed a lien upon the property in dispute by reason of a real estate mortgage executed by Richard L. Morton and Bessie Morton, his wife, to Gum Bros. Company, securing the payment of a note for the sum of $1,200 due in January, 1921; that said mortgage was duly recorded in the office of the county clerk of Okmulgee county, and that for a valuable consideration had been sold, transferred and delivered to the defendant Jessie Veness.

The question in dispute between · Gum Bros. Company, Jessie Veness, Oliver Ball, and the plaintiff is all that is before this court for disposition.

Richard L. Morton filed a reply to the separate answer of Jessie Veness, Oliver Ball, and Gum Bros. Company, in which he denied generally all and singular the allegations of the several answers, and further pleaded that he is a three fourths blood Creek Indian, enrolled as such, and that the land described in the several answers was a portion of his allotted land as a member of said tribe, and that at the time of the execution of said mortgages the land was restricted, and Richard L. Morton was without power to execute any of the conveyances or mortgages set out in the separate answers.

The issues being thus joined, a trial was had on March 7, 1917, to the court. The plaintiff introduced in evidence the homestead and allotment deeds, showing that the land described was a part of the land belonging to the Creek Nation, and that it was allotted to Richard L. Morton, a Creek Indian, whose roll number was 1628. After the plaintiff had introduced the patent deeds in evidence, he then offered in evidence a certified copy of the enrollment records of Richard L. Morton. The defendants objected to the introduction of the enrollment records upon the ground and for the reason that the same was incompetent, immaterial, and irrelevant hearsay. The objection was overruled and the record admitted in evidence. This constituted all of the evidence introduced by the plaintiff, and he thereupon rested, and the defendants demurred to the evidence on the ground and for the reason that it failed to show that Richard L. Morton was entitled to judgment, which was by the court overruled and exceptions saved.

The plaintiff admitted in open court the execution of the several mortgages to Gum

Bros. Company, two of which were afterward assigned to Jessie Veness and Oliver Ball, and that the notes were unpaid. The notes and mortgages were introduced in evidence, and the defendants rested. The court then rendered judgment as prayed for in the petition. In due time a motion for a new trial was filed and overruled, and exceptions saved, and the case is now before us for review.

The only question presented for the consideration of this court is whether or not the evidence in this case is sufficient to prove the surplus lands of Richard L. Morton were restricted. The land was allotted to Richard L. Morton by reason of his tribal relations in the Creek Tribe of Indians. The land in dispute formerly belonged to the Creek Indians and was allotted under Act Cong. March 1, 1901 (chapter 676, 31 Stat. 861), and the Supplemental Agreement of June 30, 1902 (chapter 1323, 32 Stat. 500). According to the enrollment records introduced, Richard L. Morton was 11 years of age on the 20th day of June, 1899, and was 21 years of age on the 20 day of June, 1909. There is no contention made here that he was not over the age of 21 years at the time he executed the mortgages. The enrollment record introduced shows that he is a three-fourths blood Creek Indian and by act of Congress of May 27, 1908, c. 199, 35 Stat. 312, the record is conclusive as to the quantum of Indian blood, but the enrollment record does not give the date of birth.

Section 4 of the Original Creek Agreement provides:

"Allotment for any minor may be selected by his father, mother, or guardian, in the order named, and shall not be sold during his minority. All guardians or curators appointed for minors and incompetents shall be citizens." 31 Stat. 863.

The Supplemental Agreement with the Creek Tribe of Indians adopted June 30, 1902, modified the restrictions upon the land contained in the Original Creek Agreement, except as to section 4, above quoted, which remained unchanged.

Section 16 of the Supplemental Agreement provides:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear." 32 Stat. 503.

The contention made by the plaintiff is that under section 4, supra, minority constitutes a restriction; and in view of the fact that the enrollment shows that he did not become 21 years of age until after the act of May 27, 1908, took effect, his land was still restricted, and therefore the provision of the act of May 27, 1908, attached to his land. The restrictions provided for in the act of May 27, 1908, § 1, were as follows:

"All allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance, prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions."

His claim, therefore, is that, in view of the fact that the enrollment records show that he was enrolled as a three-fourths blood Creek Indian, and was not 21 years of age when the act of May 27, 1908, became operative, the restrictions in the act of May 27, 1908, attached to his surplus lands, and that by reason thereof the mortgages executed to Gum Bros. Company on September 30, 1915, are void.

Under and by virtue of section 19 of the act of Congress of April 26, 1906, c. 1876 (34 Stat. 144), it was provided that no full-blood Indian of a Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribe shall have power to alienate, sell, dispose of, or in any manner incumber any of their allotted land for a period of 25 years, unless such restriction shall be removed prior to the expiration of such period by Congress. Except as provided by act of Congress of April 26, 1906, and section 4 of act of March 1, 1901, all restrictions expired on the 8th day of August, 1907. By the Act of Congress of April 26, 1906, it was intended to continue the restrictions upon all allotments where the allottees were full bloods that would otherwise expire on the 8th day of August, 1907.

The act of Congress of May 27, 1908, took effect on July 27, 1908. The plaintiff being a three-fourths blood Indian, all restrictions were removed from his land if he had arrived at the age of 21 years before the act of May 27, 1908, became operative. It must

be conceded that if Richard L. Morton was in fact under 21 years of age on July 27, 1908, his land was restricted and could not be alienated. If, however, he was in fact more than 21 years of age on July 27, 1908, his surplus lands were unrestricted, and restrictions provided for in section 1 of the act of May 27, 1908, did not reimpose restrictions upon his land. Therefore the question presented here is: Did the evidence introduced by the plaintiff in the court below prove that he was in fact a minor on July 28, 1908?

In an action to quiet the title the plaintiff makes out a prima facie case whenever he introduces a chain of titles showing conveyance to him and that he is in possession. If, to rebut the case thus made, the defendant shows a conveyance to him by the plaintiff, the prima facie case has been met, and, if no other evidence of any kind or character is introduced, the defendant must prevail. It therefore became incumbent upon the plaintiff to establish, by legal and competent evidence, that his lands were, by reason of his minority, restricted on July 28, 1908.

The burden of proof that the plaintiff was not 21 years of age prior to July 27, 1908, was upon him. The enrollment record introduced in this case does not disclose the date of birth, and therefore is not conclusive under the act of Congress of May 27, 1908, and the date of birth became a material fact to be proven by the plaintiff before he was entitled to recover.

This court has held that a number of times that the act of Congress of May 27, 1908, § 3, c. 199, 35 Stat. 313, providing that enrollment records of the Five Civilized Tribes should be conclusive as to quantum of Indian blood, and the age of enrolled citizens or freedmen, was not conclusive as to the date of birth, but were conclusive that the allottee had arrived at the age stated in the enrollment record at some period of time within one year prior thereto. Jordan v. Jordan, 62 Okla. 171, 162 Pac. 758; Tyrell v. Schaffer, 70 Okla. 228, 174 Pac. 1074; McDaniel v. Holland, 230 Fed. 948, 145 C. C. A. 139.

We therefore hold that, the plaintiff having failed to establish by legal and competent evidence that his lands were restricted and not subject to alienation on the 27th day of July, 1908, the judgment of the lower court should be reversed and the cause remanded for a new trial; and it is so ordered.

By the Court: It is so ordered.